BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
ALEX J. TRAMONTANO (276666)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HUNTER, Derivatively on Behalf of SONDER HOLDINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> SEAN AGGARWAL, SANJAY BANKER, CHRIS BERRY, DOMINIQUE BOURGAULT, FRANCIS DAVIDSON, MICHELLE FRYMIRE, NABEEL HYATT, FRITS DIRK VAN PAASSCHEN, GILDA PEREZ-ALVARADO, and JANICE SEARS, <br><br> Defendants, <br><br> and <br><br> SONDER HOLDINGS INC., <br><br> Nominal Defendant. | Case No. _____ <br><br> **VERIFIED SHAREHOLDER** <br> **DERIVATIVE COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Brian Hunter ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Sonder Holdings Inc. ("Sonder" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breaches of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Company's publicly available documents, conference call transcripts and public announcements, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Sonder, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought on behalf of Sonder against certain officers and members of the Company's Board for breaches of their fiduciary duties and other violations of law from March 16, 2023 through March 15, 2024, inclusive (the "Relevant Period"), as set forth below.

2. Sonder describes itself as a leading global brand of premium, design-forward apartments and intimate boutique hotels serving the modern traveler.

3. Launched in 2014, Sonder offers inspiring, thoughtfully designed accommodations and innovative, tech-enabled service combined into one seamless experience.

4. The Company's properties are found in prime locations in over forty markets, spanning nine countries and three continents.

5. The Sonder app gives guests full control over their stay. Complete with self-service features, simple check-in and 24/7 on-the-ground support, amenities and services at Sonder are just a tap away.

1

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

6.      On March 16, 2023, the Individual Defendants caused Sonder to file a Form 10-K with the SEC (the "Form 10-K") in connection with the Company's financial results for the 2022 fiscal year.

7.      The Form 10-K stated:

Notwithstanding the identified material weaknesses, management, including our Principal Executive Officer and Principal Financial Officer, believes the consolidated financial statements included in this Annual Report on Form 10-K fairly represent in all material respects our financial condition, results of operations, and cash flows at and for the periods presented in accordance with U.S. GAAP.

Leases

We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls. . . .

Changes in Internal Control over Financial Reporting

Other than as discussed above, during the period covered by this report, there has been no change in our internal control over financial reporting that has

materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

8.    Then on March 15, 2024, the Individual Defendants caused Sonder to issue a press release, wherein the Company reported that the Form 10-K and other financial statements could not be relied upon because of "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."

9.    The press release further stated that the "Company expects that the restatements will increase the Company's overall net loss and loss per share in the impacted periods."

10.    On March 15, 2024, the Individual Defendants also caused Sonder to file a Form 12b-25 with the SEC (the "Form 12b-25").

11.    As set forth in the Form 12b-25, Sonder's Form 10-K for the fiscal year of 2023 was being delayed.

12.    Following this news, Sonder's stock price fell about 38.2 percent, or by $2.10 per share, from a close of $5.50 per share on March 17, 2024 to a close of $3.40 per share the following day.

13.    As a result of the foregoing and as set forth in greater detail herein, a securities fraud class action was filed against the Company, captioned *Duffaydar v. Sonder Holdings Inc.*, Case No. 2:24-cv-02952 (C.D. Cal.) (the "Securities Class Action").

14.    The Securities Class Action has caused, and will continue to cause, Sonder to expend significant funds to defend itself against the claims asserted in that action, and exposed the Company to massive potential class-wide liability.

/ / /

/ / /

/ / /

/ / /

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**JURISDICTION AND VENUE**

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)).

16.    Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

17.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.    This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

19.    Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. § 1391 because Defendants have conducted business in this District, a substantial portion of the acts and omissions alleged herein, including the dissemination of materially false and misleading information, occurred in this District, and the Securities Class Action is pending in this District.

**PARTIES**

*Plaintiff*

20.    Plaintiff is, and has been at all relevant times, a shareholder of Sonder.

*Nominal Defendant*

21.    Nominal Defendant Sonder is a Delaware corporation with its principal executed offices located at 447 Sutter Street, Suite 405, San Francisco, California 94108. The Company's common stock trades on the NASDAQ under the ticker symbol "SOND."

*Individual Defendants*

22.    Defendant Sean Aggarwal ("Aggarwal") has served as a member of the Board of Sonder since 2022. Aggarwal is Chairperson of the Nominating, Corporate Governance,

4

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

and Social Responsibility Committee. Aggarwal is also a member of the Compensation Committee.

23.     Defendant Sanjay Banker ("Banker") has served as a member of the Board of Sonder since January 2023. Banker served as the Chief Financial Officer ("CFO") of Sonder from January 2019 through December 2022. Banker served as the President of Sonder from September 2020 through December 2022. Banker is a member of the Investment Committee. Banker beneficially owns approximately 221,724 shares of Sonder's common stock, or 1.9 percent of the outstanding shares.

24.     Defendant Chris Berry ("Berry") served as the Senior Vice President and Chief Accounting Officer of Sonder from August 2022 through August 2023.

25.     Defendant Dominique Bourgault ("Bourgault") served as the Chief Financial Officer ("CFO") of Sonder from March 2023 through December 2024.

26.     Defendant Francis Davidson ("Davidson") has served as Sonder's Chief Executive Officer and as a member of the Board of the Company since January 2014. Davidson owns approximately 1,628,678 shares of Sonder's common stock, or 12.9 percent of the outstanding shares.

27.     Defendant Michelle Frymire ("Frymire") has served as a member of the Board of Sonder since 2022. Frymire is the Chairperson of the Investment Committee. Frymire is also a member of the Nominating, Corporate Governance, and Social Responsibility Committee. During the Relevant Period, Frymire was a member of the Audit Committee.

28.     Defendant Nabeel Hyatt ("Hyatt") served as a member of the Board of Sonder from 2016 through December 2024.

29.     Defendant Frits Dirk Van Paasschen ("Paasschen") has served as a member of the Board of Sonder since 2020. Paasschen is a member of the Audit Committee as well as the Investment Committee.

30.     Defendant Gilda Perez-Alvarado ("Perez-Alvarado") served as a member of the Board of Sonder from 2021 through October 2023.

31.     Defendant Janice Sears ("Sears") has served as a member of the Board of Sonder since 2021. Sears is currently Chairperson of the Board of Sonder. Sears is Chairperson of the Audit Committee. Sears is also a member of the Compensation Committee.

32.     Defendants referenced is paragraphs 22 through 31 are referred to herein as the "Individual Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

33.     By reason of their positions as officers and/or directors of Sonder, and because of their ability to control the business and corporate affairs of Sonder, the Individual Defendants owed Sonder and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Sonder in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Sonder and its shareholders.

34.     Each director and officer of the Company owes to Sonder and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

35.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Sonder, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

36.     To discharge their duties, the officers and directors of Sonder were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

37.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Sonder, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

38.    As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

39.    To discharge their duties, the officers and directors of Sonder were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Sonder were required to, among other things: (i) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Sonder's own Code of Business Conduct and Ethics (the "Code of Conduct"); (ii) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; (iii) remain informed as to how Sonder conducted its operations, and,

upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices; (iv) establish and maintain systematic and accurate records and reports of the business and internal affairs of Sonder and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records; (v) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Sonder's operations would comply with all applicable laws and Sonder's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate; (vi) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate; (vii) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and (viii) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

40.    Each of the Individual Defendants further owed to Sonder and the shareholders the duty of loyalty requiring that each favor Sonder's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

41.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Sonder and were at all times acting within the course and scope of such agency.

42.    Because of their advisory, executive, managerial, and directorial positions with Sonder, each of the Individual Defendants had access to adverse, non-public information about the Company.

8

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

43.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Sonder.

## SONDER'S CODE OF CONDUCT

44.    According to Sonder's Code of Conduct:

At Sonder, we're committed to building a healthy, ethical, and compliant company. As a representative of Sonder Holdings Inc. and its subsidiaries (collectively, "Sonder"), your actions should reflect that commitment. Our Code of Conduct ("Code") outlines basic principles that exemplify these values, and provides you with guidelines for acceptable conduct. The Code does not address all possible situations. In the absence of a clear rule or direct supervision, you should refer to the values within the Code, use good judgement, and ask for help if you're unsure of the right course of action.

You should read, understand, and follow this Code, all Sonder policies, and always report any concerns regarding your own or others' behavior. Failure to follow the Code, our policies, or any other applicable standards of his or her position may be subject to disciplinary action, including termination of employment. . . .

We recognize the need for this Code to be applied equally to everyone it covers. The General Counsel of the Company, also referred to herein as the "Compliance Officer", will have primary authority and responsibility for the enforcement of this Code, subject to the supervision of the Nominating, Corporate Governance, and Social Responsibility Committee of Sonder's Board of Directors (the "Governance Committee"), or, in the case of

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

accounting, internal accounting controls or auditing matters, the Audit Committee of Sonder's Board of Directors, and Sonder will devote the necessary resources to enable the General Counsel to establish such procedures as may be reasonably necessary to create a culture of accountability and facilitate compliance with this Code.

Applicability

The Code applies to all individuals working for Sonder, working at Sonder, or representing Sonder. While this Code of Conduct is specifically written for Sonder's employees, officers and directors (who, unless otherwise specified, will be referred to jointly as "employees"), we expect Sonder contractors, consultants, and others who may be temporarily assigned to perform work or services for Sonder to follow the Code in connection with their work for Sonder. Sonder may impose these standards on other individuals as appropriate.

45.    As set forth in the Code of Conduct:

As a Sonder employee, you're expected to complete your work efficiently, responsibly, and in an acceptable manner. All information you provide during or related to your employment should be complete and accurate to the best of your knowledge. Maintaining the accuracy of our reporting and recordkeeping is a responsibility we all share, and all of our transactions must be correct and properly recorded. See "Do the Right Thing -- Act with Honesty and Integrity - Accurate Books, Records and Reports" for more information on the importance of honesty and accuracy in Sonder's financial reporting.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Dishonesty, deceit, or theft will not be tolerated, including embezzlement, falsifying company documents, and accepting kickbacks in any form. This also includes abusing employment benefits like time off, insurance, facilities, discounts, or other benefits Sonder offers. . . .

You are responsible for understanding and complying with the law and any signed agreements regarding the possession or distribution of non-public information. Please contact the Compliance Officer if you have any questions about whether information is confidential.

46.     The Code of Conduct further provides:

We have a responsibility to provide full and accurate information in our public disclosures about our financial condition and results of operations. Sonder's books, records and reports are only as accurate as the data from which they are derived. All employees might, at some point, contribute to the accuracy of information (including financial information) maintained by Sonder or submitted to our regulators.

You are responsible for the accurate and complete reporting of any information (including financial information) within your respective areas. You should never falsify or distort any information or document related to your work at Sonder, including but not limited to:

- expense reports;

- purchase orders;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

- benefits claims;

- invoices;

- entries in financial books and records; and

- quality and safety reports. . . .

47.    Moreover, according to the Code of Conduct:

Inaccuracies in our financial information may undermine the confidence of our customers, investors, and owners and harm our reputation. Further, inaccurate financial records could result in Sonder failing to satisfy legal, regulatory, or fiduciary obligations and cast doubt on our integrity and honesty. You must:

- maintain all of Sonder's books, records, accounts and financial statements in reasonable detail, and reflect the matters to which they relate accurately, fairly and completely;

- ensure that all books, records, accounts and financial statements conform both to applicable legal requirements and to Sonder's system of internal controls; and

- carefully and properly account for all of Sonder's assets.

12

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

48.    Furthermore, Sonder's Code of Conduct provides:

Sonder is committed to complying with the laws of the countries in which we operate. Employees have an obligation to be knowledgeable about the laws, rules, and regulations that apply to their areas of responsibility and the locations where we operate. You must understand and comply with all laws, rules and regulations that apply to your specific role, and are responsible for preventing violations of the law and for speaking up if you see possible violations. . . .

- Keeping the Audit Committee Informed. The Audit Committee of the Board (the "Audit Committee") plays an important role in ensuring the integrity of the Company's public reports. See below under "Follow our Code -- Reporting of Any Illegal or Unethical Behavior" for additional information.

49.    Additionally, as set forth in the Code of Conduct:

Situations that may involve a violation of ethics, laws or this Code may not always be clear and may require difficult judgment calls. You are encouraged to seek guidance from your manager, the Compliance Officer or Human Resources when in doubt about the best course of action to take in a particular situation. In most instances, you should report any concerns or questions about a violation of laws, rules, regulations or this Code to your supervisors/managers or Sonder's General Counsel or, in the case of accounting, internal accounting controls or auditing matters, the Audit Committee.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

If you know of or suspect a violation of this Code, or of applicable laws and regulations (including complaints or concerns about accounting, internal accounting controls or auditing matters), or if you have concerns about a situation that you believe does not reflect Sonder's culture and values, you must report it immediately to your manager, the Compliance Officer or Human Resources. You may also report concerns anonymously (i) by calling the Company's confidential independent secure reporting hotline at 1-833-411- 1180 or (ii) by accessing the Company's confidential independent secure web portal at http://sonder.ethicspoint.com. . . .

The Audit Committee plays an important role in ensuring the integrity of Sonder's public reports. If you believe that questionable accounting or auditing conduct or practices have occurred or are occurring, you should notify the Audit Committee. In particular, you should promptly bring to the attention of the Audit Committee any information of which you become aware concerning:

- the accuracy of material disclosures made by Sonder in its public filings;

- material weaknesses or significant deficiencies in internal control over financial reporting;

- any evidence of fraud that involves an employee who has a significant role in the Sonder's financial reporting, disclosures or internal controls or procedures; or

14

- any evidence of a material violation of the policies in this Code regarding financial reporting.

## SONDER'S AUDIT COMMITTEE CHARTER

50.    Sonder's Audit Committee is governed by its Audit Committee Charter.

51.    The Audit Committee Charter provides:

The purpose of the Committee shall be to assist the Board in its oversight of:

1. the quality and integrity of the accounting and financial reporting processes and internal controls of the Company;

2. the Company's financial statement audits and the integrity of the Company's financial statements;

3. the Company's compliance with applicable law (including U.S. federal securities laws and other legal and regulatory requirements) applicable to the financial statement and accounting and financial reporting processes;

4. the Company's compliance with ethical standards adopted by the Company;

5. the Company's systems of disclosure controls and procedures;

6. the qualifications, independence and performance of the Company's independent auditors;

7. the implementation and performance of the Company's internal audit function;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

8. disclosures related to environmental, social and governance ("ESG") matters; and

9. the Company's enterprise-wide risk assessment, focusing on material risks. . . .

52.    The Audit Committee Charter further sets forth that:

The Committee shall meet with management, the internal audit department, if applicable, and the Company's independent auditor to review and discuss the Company's internal controls and the integrity of the Company's audited financial statements. Included in this process shall be review of:

a. the scope and timing of the annual audit of the Company's financial statements;

b. the Company's annual audited and quarterly unaudited financial statements and annual and quarterly reports on Form 10-K and Form 10-Q, including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations"; the Committee shall make a recommendation to the Board as to whether the audited financial statements and "Management's Discussion and Analysis of Financial Condition and Results of Operations" should be included in the Company's Form 10-K for filing with the SEC;

c. the results of the independent audit and the quarterly reviews, and the independent auditor's opinion on the audited financial statements;

d. the quality and adequacy of the Company's internal controls, and discussion with management and the independent auditor with regard to

16

any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls;

e. the Company's disclosure controls and procedures, as well as the quarterly assessments of such controls and procedures by the Chief Executive Officer and Chief Financial Officer;

f. any major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies;

g. any analyses prepared by management or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements;

h. the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and

i. any audit problems or difficulties the independent auditor encountered in the course of its audit work, including any restrictions on the scope of the independent auditor's activities or on access to requested information, and any significant disagreements with management. . . .

The Committee shall periodically discuss with management the Company's procedures with respect to the presentation of the Company's financial information (paying attention to any use of "pro forma" or "adjusted" non-

17

GAAP information, among other things) and review earnings press releases and related materials (if any), earnings guidance provided to analysts and rating agencies and financial information provided to the public, analysts and ratings agencies.

## **SUBSTANTIVE ALLEGATIONS**

### *Background of the Company*

53. Sonder describes itself as a leading global brand of premium, design-forward apartments and intimate boutique hotels serving the modern traveler.

54. Launched in 2014, Sonder offers inspiring, thoughtfully designed accommodations and innovative, tech-enabled service combined into one seamless experience.

55. The Company's properties are found in prime locations in over forty markets, spanning nine countries and three continents.

56. The Sonder app gives guests full control over their stay. Complete with self-service features, simple check-in and 24/7 on-the-ground support, amenities and services at Sonder are just a tap away.

57. There are two Generally Accepted Accounting Principles ("GAAP") that are applicable to Sonder's business.

58. First, Accounting Standards Codification ("ASC") 360 gives guidelines on how to account long-lived assets, including land, buildings, and equipment.

59. ASC 360 also governs how businesses should account for acquisitions, depreciation, impairment, and disposal of assets.

60. Moreover, ASC 360 requires that impairment occurs when the current fair value of an asset differs from its carrying value.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

61.    Second, 842 requires all lessees to recognize all leases on its balance sheets, with exceptions.

62.    Further, ASC eliminates real estate-specific provisions and modifies certain parts of a lessor's accounting. This requires lessees to recognizes lease right of use ("ROU") assets and lease liabilities on their balance sheets for most leases.

63.    ASC 842 eliminates the classification of leases as operating or finance leases. Rather, it requires lessees to recognize an ROU asset and lease liability and essentially all lease contracts.

***Materially False and Misleading Statements***

64.    On March 16, 2023, the Individual Defendants caused Sonder to file the Form 10-K with the SEC, which was signed by Individual Defendants Aggarwal, Banker, Berry, Davidson, Frymire, Hyatt, Paasschen, Perez-Alvarado, and Sears, wherein the Company reported its 2022 fourth quarter and full year financial results.

65.    The Form 10-K included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") and Exchange Act Rules 13a-14(a) and 15(d)-14(a), which were signed by Individual Defendants Berry and Davidson.

66.    The Form 10-K reported "Operating lease right-of-use ('ROU') assets" of $1,209,486,000 for fiscal year 2022. For fiscal year 2021, however, the same item only included a "--."

67.    Specifically, the Form 10-K provided:

SONDER HOLDINGS INC. AND SUBSIDIARIES
CONSOLIDATED BALANCE SHEETS
December 31, 2022 and 2021
(In thousands, except share and per share information)

|  | 2022 | 2021 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash | $ 246,624 | $ 69,726 |
| Restricted cash | 42,562 | 215 |

19
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | |
|---|---:|---:|
| Accounts receivable, net of allowance of $972 and $4,127 at December 31, 2022 and 2021, respectively | 5,613 | 4,638 |
| Prepaid rent | — | 2,957 |
| Prepaid expenses | 8,066 | 5,029 |
| Other current assets | 10,065 | 16,416 |
| Total current assets | 312,930 | 98,981 |
| Property and equipment, net | 34,926 | 27,461 |
| Operating lease right-of-use ("ROU") assets | 1,209,486 | — |
| Other non-current assets | 16,270 | 22,037 |
| Total assets | $ 1,573,612 | $ 148,479 |

68.    The Form 10-K further provided:

Operating lease ROU assets are included within operating lease right-of-use assets in the consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

The adoption of ASC 842 had a material impact on the Company's consolidated financial statements. On January 1, 2022, the Company recognized $1.0 billion in operating lease ROU assets, $1.1 billion of operating lease liabilities, and a $66.1 million reduction to deferred rent, which was recorded as a reduction to the ROU asset measured on the adoption date. The standard did not materially impact the Company's consolidated statement of operations and comprehensive loss or consolidated statement of cash flows.

Lease expense for fixed operating lease payments is recognized on a straight-

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

69. The Form 10-K also disclosed the "Components of operating lease expense" and "Supplemental information related to operating leases."

70. Specifically, the Form 10-K provided:

Components of operating lease expense were as follows (in thousands):

| | Year ended December 31, 2022 |
|---|---|
| Operating lease cost | $ 268,810 |
| Short-term lease cost | 3,203 |
| Variable lease cost | (2,582) |
| Total operating lease cost | $ 269,431 |

Supplemental information related to operating leases was as follows (in thousands):

| | Year ended December 31, 2022 |
|---|---|
| Cash payments for operating leases | $ 218,434 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ 356,157 |

71. Moreover, the Form 10-K provided:

Notwithstanding the identified material weaknesses, management, including our Principal Executive Officer and Principal Financial Officer, believes the consolidated financial statements included in this Annual Report on Form 10-K fairly represent in all material respects our financial condition, results of operations, and cash flows at and for the periods presented in accordance with

21

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

U.S. GAAP.

Leases

We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls. . . .

Other than as discussed above, during the period covered by this report, there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

72.    On April 19, 2023, the Individual Defendants caused Sonder to file a proxy statement with the SEC (the "2023 Proxy").

73.    The 2023 Proxy disclosed that an annual meeting of stockholders was being held on June 6, 2023, for the following purposes:

1.    To elect the nominees for Class II director named in the Proxy Statement accompanying this Notice of Annual Meeting of Stockholders (the Proxy Statement) to serve until the 2026 annual meeting of stockholders and until their successors are duly elected and qualified;

2.    To ratify the selection of Deloitte & Touche LLP as the independent registered public accounting firm for the Company for the fiscal year ending December 31, 2023; and

3.    To conduct any other business properly brought before the Annual Meeting.

74.    Regarding Items 1 and 2 above, the 2023 Proxy contained the following Board recommendations:

The Board recommends that you vote your shares:

• "FOR" the election of all nominees for director; and

• "FOR" the ratification of the selection of Deloitte as our independent registered public accounting firm for the fiscal year ending December 31, 2023.

75.    The 2023 Proxy further provided:

The Board has adopted a Code of Business Conduct and Ethics that applies to all employees and directors, including our principal executive officer, principal financial officer, principal accounting officer, other executive officers, and other senior financial personnel. A copy of our Code of Business Conduct and Ethics is available in the Investor Relations section of our website at investors.sonder.com under "Corporate Governance—Document & Charters—Governance Documents." Information on or accessible through

23

our website is not incorporated by reference in this Proxy Statement. If we make any substantive amendment to a provision of our Code of Business Conduct and Ethics that applies to, or grant any waiver from a provision of our Code of Business Conduct and Ethics to, our principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, we will promptly disclose the date and nature of the amendment or waiver (including the name of the person to whom the waiver was granted) on our website in accordance with the requirements of Item 5.05 of Form 8-K. . . .

Risk is inherent with every business, and we face a number of risks, including strategic, financial, business and operational, legal and compliance and reputational. We have designed and implemented processes to manage risk in our operations. Management is responsible for the day-to-day management of risks the Company faces, while one of the Board's key functions is informed oversight of the Company's risk management process.

The Board believes that its current leadership structure facilitates its risk oversight responsibilities. The Board does not have a standing risk management committee, but rather administers this oversight function directly through the Board as a whole, as well as through the various standing Board committees that address risks inherent in their respective areas of oversight. For example, the Board acts as the ultimate decision-making body of the Company and advises and oversees management, who are responsible for the day-to-day operations and management of the Company. The Board believes the majority-independent Board and independent Board committees provide a well-functioning and effective balance to an experienced Chairperson. The

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Audit Committee oversees the Company's accounting and financial reporting processes, including our systems of disclosure controls and procedures and internal control over financial reporting, the performance of our internal audit function, and financial statement audits, monitors compliance with legal and regulatory requirements, and reviews the Company's policies and practices with respect to risk assessment and risk management. The Governance Committee monitors the effectiveness of, and oversees compliance with, our corporate governance guidelines and policies and assesses the overall operation and functioning of the Board and its committees. The Compensation Committee assesses and monitors whether any of our compensation programs, policies and practices has the potential to encourage excessive risk-taking.

76.     The 2023 Proxy was materially false and misleading.

77.     Specifically, the 2023 Proxy omitted that: (i) the Individual Defendants knew and/or recklessly disregarded that the Company improperly accounted for the impairment and valuation of the operating lease ROU assets; (ii) the Individual Defendants violated Sonder's Code of Conduct; (iii) the Individual Defendants violated the Audit Committee Charter; and (iv) the Individual Defendants were not properly fulfilling their risk oversight responsibilities.

78.     As a result of the foregoing materially false and misleading statements in the 2023 Proxy, Sonder's stockholders voted to reelect Individual Defendants Frymire and Perez-Alvarado as directors of Sonder.

79.     Furthermore, as a result of the foregoing materially false and misleading statements in the 2023 Proxy, Sonder's stockholders voted to ratify the selection of Deloitte & Touche LLP as the Company's independent registered public accounting firm.

80.     On May 10, 2023, the Individual Defendants caused Sonder to file a Form 10-Q with the SEC, which was signed by Individual Defendant Berry and wherein the

Company reported its financial results for the 2023 first quarter (the "May 2023 Form 10-Q").

81. The May 2023 Form 10-Q included certifications pursuant to the SOX, which were signed by Individual Defendants Bourgault and Davidson.

82. The May 2023 Form 10-Q disclosed "Operating lease right-of-use ('ROU') assets" of $1,201,007,000.

83. Specifically, the May 2023 Form 10-Q included the following:

## SONDER HOLDINGS INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED BALANCE SHEETS
### (In thousands)
### (Unaudited)

| | March 31, 2023 | December 31, 2022 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 217,968 | $ 246,624 |
| Restricted cash | 28,436 | 42,562 |
| Accounts receivable, net of allowance of $1,346 and $972 at March 31, 2023 and December 31, 2022, respectively | 6,990 | 5,613 |
| Prepaid expenses | 5,128 | 8,066 |
| Other current assets | 12,708 | 10,065 |
| Total current assets | 271,230 | 312,930 |
| Property and equipment, net | 35,432 | 34,926 |
| Operating lease right-of-use ("ROU") assets | 1,201,007 | 1,209,486 |
| Other non-current assets | 13,791 | 16,270 |
| Total assets | $ 1,521,460 | $ 1,573,612 |
| Liabilities and stockholders' deficit | | |
| Current liabilities: | | |
| Accounts payable | $ 14,093 | $ 16,082 |
| Accrued liabilities | 18,230 | 20,131 |
| Taxes payable | 16,497 | 14,418 |
| Deferred revenue | 58,424 | 41,664 |
| Current operating lease liabilities | 172,422 | 158,346 |
| Total current liabilities | 279,666 | 250,641 |

26
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | |
|---|---|---|
| Non-current operating lease liabilities | 1,156,913 | 1,166,538 |
| Long-term debt, net | 179,665 | 172,950 |
| Other non-current liabilities | 2,043 | 3,430 |
| Total liabilities | 1,618,287 | 1,593,559 |

84.    The May 2023 Form 10-Q further stated:

Operating lease ROU assets are included within operating lease right- of-use assets in the consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

Lease expense for fixed operating lease payments is recognized on a straight-line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

85.    The May 2023 Form 10-Q provided "Components of lease expense" and "Supplemental information related to operating leases."

86.    Specifically, the May 2023 Form 10-Q included the following:

Components of lease expense were as follows (in thousands):

| | Three months ended March 31, | |
|---|---|---|
| | 2023 | 2022 |
| Operating lease cost | $    75,259 | $    62,947 |
| Short-term lease cost | 632 | 2 |
| Variable lease cost | 1,501 | 643 |
| Total operating lease cost | $    77,392 | $    63,592 |

27

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Supplemental information related to operating leases was as follows (in thousands):

|  | Three months ended March 31, | |
|  | 2023 | 2022 |
| --- | --- | --- |
| Cash payments for operating leases | $ 68,215 | $ 49,765 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ 38,527 | $ 114,900 |

* * *

Rental expense for operating leases for the years ended December 31, 2022, 2021, and 2020 was $268.8 million, $184.8 million, and $133.1 million, respectively, of which $263.4 million, $176.5 million, and $124.8 million, respectively, was recognized in cost of revenues, $1.7 million, $5.5 million, and $2.8 million, respectively, was recognized in operations and support, and $3.7 million, $2.8 million, and $5.5 million, respectively, was recognized in general and administrative. . . .

We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls. . . .

Other than the remediation efforts in progress, during the period covered by this report, there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

affect, our internal control over financial reporting.

87. On August 9, 2023, the Individual Defendants caused Sonder to file a Form 10-Q with the SEC, which was signed by Individual Defendant Berry and wherein the Company reported its financial results for the 2023 second quarter (the "August 2023 Form 10-Q").

88. The August 2023 Form 10-Q included certifications pursuant to the SOX, which were signed by Individual Defendants Bourgault and Davidson.

89. The August 2023 Form 10-Q disclosed "Operating lease right-of-use ('ROU') assets" of $1,308,719,000.

90. Specifically, the August 2023 Form 10-Q provided the following:

### SONDER HOLDINGS INC. AND SUBSIDIARIES
### CONDENSED CONSOLIDATED BALANCE SHEETS
#### (In thousands)
#### (Unaudited)

| | June 30, 2023 | December 31, 2022 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 177,444 | $ 246,624 |
| Restricted cash | 42,069 | 42,562 |
| Accounts receivable, net of allowance of $1,461 and $972 at June 30, 2023 and December 31, 2022, respectively | 14,042 | 5,613 |
| Prepaid expenses | 8,786 | 8,066 |
| Other current assets | 11,516 | 10,065 |
| Total current assets | 253,857 | 312,930 |
| Property and equipment, net | 31,616 | 34,926 |
| Operating lease right-of-use ("ROU") assets | 1,308,719 | 1,209,486 |
| Other non-current assets | 13,667 | 16,270 |
| Total assets | $ 1,607,859 | $ 1,573,612 |
| | | |
| Liabilities and stockholders' deficit | | |
| Current liabilities: | | |
| Accounts payable | $ 19,878 | $ 16,082 |
| Accrued liabilities | 18,555 | 20,131 |

29

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | |
|---|---:|---:|
| Taxes payable | 15,476 | 14,418 |
| Deferred revenue | 59,858 | 41,664 |
| Current operating lease liabilities | 183,487 | 158,346 |
| Total current liabilities | 297,254 | 250,641 |
| Non-current operating lease liabilities | 1,259,207 | 1,166,538 |
| Long-term debt, net | 186,884 | 172,950 |
| Other non-current liabilities | 1,106 | 3,430 |
| Total liabilities | 1,744,451 | 1,593,559 |

91.     The August 2023 Form 10-Q further provided:

Operating lease ROU assets are included within operating lease right- of-use assets in the condensed consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the condensed consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

Lease expense for fixed operating lease payments is recognized on a straight-line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

92.     The August 2023 Form 10-Q provided "Components of lease expense" and "Supplemental information related to operating leases."

93.     Specifically, the August 2023 Form 10-Q disclosed:

Components of lease expense were as follows (in thousands):

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2023 | 2022 | 2023 | 2022 |
| Operating lease cost | $ 74,579 | $ 65,876 | $ 149,838 | $ 128,823 |
| Short-term lease cost | (201) | 477 | 431 | 479 |
| Variable lease cost | 371 | 944 | 1,872 | 1,587 |
| Total operating lease cost | $ 74,749 | $ 67,297 | $ 152,141 | $ 130,889 |

Supplemental information related to operating leases was as follows (in thousands):

| | Three months ended June 30, | | Six months ended June 30, | |
|---|---|---|---|---|
| | 2023 | 2022 | 2023 | 2022 |
| Cash payments for operating leases | $ 74,958 | $ 56,838 | $ 143,173 | $ 106,603 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ 148,510 | $ 11,968 | $ 187,037 | $ 126,868 |

94.    The August 2023 Form 10-Q further provided:

Total operating lease cost for the three months ended June 30, 2023 and 2022 was $74.7 million and $67.2 million, respectively, of which $74.3 million and $64.5 million, respectively, is recognized in cost of revenues, $0.2 million and $0.2 million, respectively, in operations and support, and $0.2 million and $1.1 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss.

Total operating lease cost for the six months ended June 30, 2023 and 2022 was $152.1 million and $130.9 million, respectively, of which $150.6 million and $128.1 million, respectively, is recognized in cost of revenues, $0.4

million and $0.9 million respectively, in operations and support, and $1.1 million and $1.9 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss. . . .

We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls. . . .

Other than the remediation efforts in progress, during the period covered by this report, there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

95. On November 14, 2023, the Individual Defendants caused Sonder to file a Form 10-Q with the SEC, which was signed by Individual Defendant Bourgault and wherein the Company reported its financial results for the 2023 third quarter (the "November 2023 Form 10-Q").

96. The November 2023 Form 10-Q included certifications pursuant to the SOX, which were signed by Individual Defendants Bourgault and Davidson.

97. The November 2023 Form 10-Q disclosed "Operating lease right-of-use ('ROU') assets" of $1,439,572,000.

98. Specifically, the November 2023 Form 10-Q provided the following:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**SONDER HOLDINGS INC. AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
(In thousands)
(Unaudited)

| | September 30, 2023 | December 31, 2022 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 166,045 | $ 246,624 |
| Restricted cash | 41,188 | 42,562 |
| Accounts receivable, net of allowance of $3,265 and $972 at September 30, 2023 and December 31, 2022, respectively | 9,105 | 5,613 |
| Prepaid expenses | 6,388 | 8,066 |
| Other current assets | 10,532 | 10,065 |
| Total current assets | 233,258 | 312,930 |
| Property and equipment, net | 28,462 | 34,926 |
| Operating lease right-of-use ("ROU") assets | 1,439,572 | 1,209,486 |
| Other non-current assets | 15,045 | 16,270 |
| Total assets | $ 1,716,337 | $ 1,573,612 |
| Liabilities and stockholders' deficit | | |
| Current liabilities: | | |
| Accounts payable | $ 20,514 | $ 16,082 |
| Accrued liabilities | 24,694 | 20,131 |
| Taxes payable | 15,894 | 14,418 |
| Deferred revenue | 67,819 | 41,664 |
| Current portion of long-term debt | 1,000 | — |
| Current operating lease liabilities | 199,345 | 158,346 |
| Total current liabilities | 329,266 | 250,641 |
| Non-current operating lease liabilities | 1,382,693 | 1,166,538 |
| Long-term debt, net | 196,398 | 172,950 |
| Other non-current liabilities | 668 | 3,430 |
| Total liabilities | 1,909,025 | 1,593,559 |

99.     The November 2023 Form 10-Q also included the following, reflecting a loss of $105,422,000 for "Operating lease ROU assets and operating lease liabilities, net":

/ / /

/ / /

/ / /

33

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## SONDER HOLDINGS INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOWS
(In thousands)
(Unaudited)

| | Nine months ended September 30, | |
| --- | --- | --- |
| | 2023 | 2022 |
| Cash flows from operating activities: | | |
| Net loss | $ (196,034) | $ (108,392) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | |
| Depreciation and amortization | 18,908 | 17,801 |
| Stock-based compensation | 25,362 | 18,139 |
| Amortization of operating lease ROU assets | 130,192 | 105,569 |
| Impairment of ROU assets | 1,087 | — |
| (Gain) loss on foreign exchange | (2,445) | 13,092 |
| Capitalization of paid-in-kind interest on long-term debt | 20,418 | 12,544 |
| Amortization of debt issuance costs | 6 | 149 |
| Amortization of debt discounts | 1,274 | 3,374 |
| Change in fair value of share-settled redemption feature and gain on conversion of convertible notes | — | (29,512) |
| Change in fair value of SPAC Warrants | (674) | (23,819) |
| Change in fair value of Earn Out Liability | (2,142) | (94,299) |
| Other operating activities | 897 | 1,362 |
| Changes in: | | |
| Accounts receivable, net | (4,817) | (1,560) |
| Prepaid expenses | 1,885 | (2,543) |
| Other current and non-current assets | 1,177 | 10,750 |
| Accounts payable | 4,433 | (28,401) |
| Accrued liabilities | 3,911 | 2,295 |
| Taxes payable | 1,706 | 6,181 |
| Deferred revenue | 25,651 | 30,204 |
| Operating lease ROU assets and operating lease liabilities, net | (105,422) | (58,493) |
| Other current and non-current liabilities | 589 | 1,467 |
| Net cash used in operating activities | (74,038) | (124,092) |

100.    The November 2023 Form 10-Q further provided:

Operating lease ROU assets are included within operating lease right- of-use assets in the condensed consolidated balance sheets. The corresponding

34

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the condensed consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

Lease expense for fixed operating lease payments is recognized on a straight-line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

101.   The November 2023 Form 10-Q included "Components of lease expense" and "Supplemental information related to operating leases."

102.   Specifically, the November 2023 Form 10-Q provided:

Components of lease expense were as follows (in thousands):

| | Three months ended September 30, | | Nine months ended September 30, | |
|---|---|---|---|---|
| | 2023 | 2022 | 2023 | 2022 |
| Operating lease cost | $ 85,025 | $ 61,498 | $ 234,801 | $ 191,908 |
| Short-term lease cost | 343 | 1,951 | 780 | 2,430 |
| Variable lease cost | 6,356 | — | 9,425 | — |
| Total operating lease cost | $ 91,724 | $ 63,449 | $ 245,006 | $ 194,338 |

Supplemental information related to operating leases was as follows (in thousands):

| | Three months ended September 30, | | Nine months ended September 30, | |
|---|---|---|---|---|
| | 2023 | 2022 | 2023 | 2022 |

35

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cash payments for operating leases | $ | 73,777 | $ | 64,690 | $ | 216,950 | $ | 171,292 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ | 173,781 | $ | 73,007 | $ | 360,818 | $ | 199,875 |

103.    Moreover, the November 2023 Form 10-Q provided:

Total operating lease cost for the three months ended September 30, 2023 and 2022 was $91.7 million and $63.4 million, respectively, of which $91.2 million and $62.0 million, respectively, is recognized in cost of revenues, $0.2 million and $0.5 million, respectively, in operations and support, and $0.3 million and $0.9 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss.

Total operating lease cost for the nine months ended September 30, 2023 and 2022 was $245.0 million and $194.3 million, respectively, of which $243.0 million and $190.1 million, respectively, is recognized in cost of revenues, $0.6 million and $1.4 million respectively, in operations and support, and $1.4 million and $2.8 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss. . . .

As of September 30, 2023, the Company identified an impairment of its operating lease right of use (ROU) asset and recorded a related impairment charge in the amount of $1.1 million. The impairment charge is included within other operating expenses for the three and nine months ended

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

September 30, 2023 as reported in the condensed consolidated statements of operations. . . .

We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls. . . .

Other than the remediation efforts in progress, during the period covered by this report, there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

104.    The above-referenced statements were materially false and misleading.

105.    Specifically, the Individual Defendants omitted that they knew and/or recklessly disregarded that the Company improperly accounted for the impairment and valuation of its operating lease ROU assets.

**The Truth Begins to Emerge**

106.    On March 15, 2024, the Individual Defendants caused Sonder to issue a press release, also filed with the SEC, which disclosed that Sonder's audited financial statements for the Form 10-K as well as the Forms 10-Q would no longer be able to be relied on because of "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."

107.    The press release stated:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

2   The Company has previously identified and reported material weaknesses in

3   internal controls over financial reporting related to the Company's leases,

4   control activities and control environment. During the on-going preparation

5   of the Company's financial statements for the fiscal year ended December 31,

6   2023, the Company's management identified specific errors in the processes

7   and procedures surrounding the Company's assessment of the valuation and

8   impairment of its ROU lease assets and related items. Upon additional review,

9   the Company's management determined that the valuation of certain ROU

10  lease assets and related items as of and for each of the Non-Reliance Periods

11  had not considered certain relevant impairment indicators and related

12  valuation information impacting the carrying value of such assets and related

13  items, as required by Accounting Standards Codification (ASC) Nos. 842,

14  Leases, and 360, Property, Plant, and Equipment, in addition to related

15  standards and interpretations. . . .

16

17  The Company previously recorded an impairment charge in the amount of

18  $1.1 million related to ROU lease assets in its unaudited condensed

19  consolidated financial statements for the three and nine months ended

20  September 30, 2023, but no impairment charges were recorded in the other

21  interim financial statements in the Non-Reliance Periods or in the 2022

22  Annual Financial Statements. Based on the Company's review, which is

23  ongoing, the Company expects to record material non-cash impairment

24  charges, and related reductions in ROU lease assets and related items, in

25  certain of the Non-Reliance Periods.

26

27

28

The foregoing ROU lease asset and related item errors are non-cash in nature and will not impact the Company's reported cash balances or statements of cash flows for the Non-Reliance Periods. The Company expects that the restatements will increase the Company's overall net loss and loss per share in the impacted periods.

108.    The press release further provided:

The Company intends to restate the Affected Financial Statements to correct the errors discussed above, and consider any other error corrections identified in the course of its review, as soon as practicable. Investors and others should rely on financial information and other disclosures regarding the Non-Reliance Periods only after the Company restates its financial statements for the Non-Reliance Periods.

The Company anticipates that it will not timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2023 (the "FY 2023 10-K") and will file a notification of late filing on Form 12b-25 with the SEC. The Company does not currently expect that it will file the FY 2023 10-K within the 15-day extension period contemplated by Rule 12b-25(b) under the Securities Exchange Act of 1934, as amended. Accordingly, the Company expects to receive a notice from The Nasdaq Stock Market that it is not in compliance with the timely filing requirement for continued listing under Nasdaq Listing Rule 5250(c)(1). . . .

Although the assessment is not yet complete, the Company anticipates that the review will result in one or more material weaknesses in the Company's

internal control over financial reporting during the applicable periods, in addition to the Company's previously identified and reported material weaknesses.

The Company's management and the Audit Committee have discussed the foregoing matters with the Company's independent registered public accounting firm, Deloitte & Touche LLP.

109.    Moreover, the press release disclosed:

The Company's restatement and the related items discussed in this Form 8-K could have an adverse effect upon the Company's debt, including under the Loan and Security Agreement dated as of December 21, 2022, as amended, with Silicon Valley Bank, a division of First Citizens Bank & Trust Company, and the Note and Warrant Purchase Agreement dated as of December 10, 2021, as amended, with certain private placement investors. The Company is engaging in discussions with its lenders to seek waivers of any noncompliance under the terms of its debt resulting from the accounting errors and to permit the late filing of the FY 2023 10-K. If such waivers are not obtained, any such noncompliance may entitle our lenders to terminate any existing commitments to lend, impose increased interest rates, accelerate our outstanding debt obligations, initiate foreclosure proceedings against any assets constituting collateral for such obligations and exercise other rights and remedies available under the terms of our debt agreements. If our debt were to be accelerated, the Company may not have sufficient cash or be able to borrow sufficient funds to refinance the debt or sell sufficient assets to repay the debt, which could immediately adversely affect our business, cash flows, results of operations and financial condition. Even if we were able to obtain new financing or

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

negotiate amended terms with our existing lenders, such financing or amendments may not be on commercially reasonable terms or on terms that are acceptable to us. . . .

As of December 31, 2023, the Company's total cash, cash equivalents and restricted cash was $136.5 million, of which $40.7 million was restricted, as compared to $207.2 million, of which $41.2 million was restricted, as of September 30, 2023. As communicated in prior disclosures, the Company has been executing on a number of initiatives to improve its financial position, including reducing its corporate headcount by 38% since the first quarter of 2022, and engaging in a portfolio optimization program to improve the financial performance of the properties it operates. The Company is also exploring a number of additional opportunities to improve revenue by enhancing its distribution arrangements, further reduce its expenditures, and partner with current or alternative capital providers to improve its liquidity position, but can give no assurances that these alternatives will be successful. If these alternatives are not successful, the Company may not be able to continue ongoing operations or meet its obligations without favorable liquidity options or additional funding.

110.   On March 15, 2024, the Individual Defendants also caused Sonder to file the Form 12b-25 with the SEC.

111.   The Form 12b-25 provided:

Sonder Holdings Inc. (the "Company") is unable to file its Annual Report on Form 10-K for the year ended December 31, 2023 (the "Form 10-K") within the prescribed time period, without unreasonable effort or expense. As

disclosed in the Company's Current Report on Form 8- K dated March 15, 2024, which is hereby incorporated by reference, on March 14, 2024, the Audit Committee of the Board of Directors of the Company determined, based on management's recommendation, that the Company's audited consolidated financial statements for the year ended December 31, 2022, and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the Securities and Exchange Commission in 2023, should no longer be relied upon due to accounting errors related to the valuation and impairment of operating lease right of use assets and related items. The Company intends to restate the affected financial statements to correct the errors and any other errors identified in the course of its review, as soon as practicable. The Company's management is also assessing the effect of these matters on the Company's internal control over financial reporting and its disclosure controls and procedures. The Company requires additional time to complete the foregoing restatements and control assessments and to finalize its fiscal year 2023 financial statements for inclusion in the Form 10-K. The Company does not expect to file the Form 10-K within the 15-day extension period prescribed by Rule 12b-25 under the Securities Exchange Act of 1934, as amended.

The description above is preliminary and subject to change in connection with the Company's ongoing review and the completion of the anticipated restatements. Accordingly, there can be no assurance as to the timing of the filing of the Form 10-K or the results of the Company's ongoing review.

/ / /

/ / /

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

112.    Following this news, Sonder's share price fell about 38.2 percent, or by $2.10 per share, from a close of $5.50 per share on March 17, 2024 to close of $3.40 per share the following day.

113.    On August 22, 2024, Sonder reported that Deeksha Hebbar, Sonder's then-Chief Operating Officer, would be resigning.

114.    Then on September 27, 2024, the Individual Defendants caused Sonder to file a Form 10-K with the SEC (the "2023 Form 10-K").

115.    The 2023 Form 10-K disclosed:

As described in the Company's Current Report on Form 8-K filed with the SEC on March 15, 2024, on March 14, 2024, the Audit Committee (the "Audit Committee") of the Board of Directors of the Company determined, based on management's recommendation, that the Company's previously issued audited consolidated financial statements for the year ended December 31, 2022 (the "2022 Annual Financial Statements"), and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the SEC in 2023 (collectively with the 2022 Annual Financial Statements, the "Affected Financial Statements"), should no longer be relied upon.

Additionally, the Company determined any previously issued or filed reports, earnings releases, and investor presentations or other communications including or describing the Affected Financial Statements and related financial information covering the Affected Financial Statements should no longer be relied upon.

The Company has previously identified and reported material weaknesses in

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

internal controls over financial reporting related to the Company's leases, control activities and control environment. During the preparation of the Company's financial statements for the year ended December 31, 2023, the Company's management identified specific errors in the processes and procedures surrounding the Company's assessment of the valuation and impairment of its right-of- use ("ROU") lease assets and related items. Management identified a material weakness in its controls related to this matter, which is included in Part II, Item 9A of this Annual Report on Form 10-K.

Restatement of Previously Issued Consolidated Financial Statements

This Annual Report on Form 10-K for the year ended December 31, 2023 includes consolidated financial statements as of and for the years ended December 31, 2023, 2022 and 2021, as well as the relevant unaudited interim financial information for the quarterly periods in the years ended December 31, 2023 and 2022. The Company has restated certain information within this Annual Report on Form 10-K, including the consolidated financial statements as of and for the year ended December 31, 2022, and the relevant unaudited interim financial information for the quarterly periods in 2022 and 2023. In addition to the restatement errors described above, the Company has also corrected certain items that were previously identified and determined to be immaterial, individually and in the aggregate, to the consolidated financial statements for the year ended December 31, 2022 and the interim financial information for the quarterly periods in 2022 and 2023.

Additionally, the Company identified certain adjustments which were

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

previously corrected out of period in the year ended December 31, 2022 but which related to activity occurring in the year ended December 31, 2021. In the context of its current restatement of the year ended December 31, 2022, the Company has also restated the year ended December 31, 2021 to reflect correction for these adjustments and has marked the impacted financial statements for the year ended December 31, 2021 as 'Restated' to highlight the correction of these immaterial errors. The Company considers its restatement to the year ended December 31, 2021 to be immaterial as defined in Accounting Standards Codification ("ASC") 250, Accounting Changes and Error Corrections, and related standards and interpretations.

116.    Not long after, on November 4, 2024, Sonder announced that Individual Defendant Bourgault, as well as the Company's Chief Accounting Officer Adam Bowen, were resigning.

***The Securities Class Action***

117.    As a result of the foregoing, the Securities Class Action was filed against the Company, Berry, Bourgault, and Davidson, captioned *Duffaydar v. Sonder Holdings Inc.*, Case No. 2:24-cv-02952 (C.D. Cal.).

118.    As a result, Sonder has incurred, and will continue to incur, substantial costs to defend itself in the Securities Class Action, and is exposed to massive potential class-wide liability.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

119.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

120.    Sonder is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

121.    Plaintiff is a current shareholder of Sonder and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

122.    A pre-suit demand on the Board of Sonder is futile and, therefore, excused.

123.    The Board consists of Individual Defendants Aggarwal, Banker, Davidson, Frymire, Paasschen, and Sears, as well as non-parties Simon Turner and Erin Wallace.

124.    Given the factual allegations set forth herein, Plaintiff has not made a demand on the Board to bring this action against the Individual Defendants. A pre-suit demand on the Board would be futile as there is reason to doubt that a majority of the members of the Board is capable of making an independent and/or disinterested decision to initiate and vigorously pursue this action.

125.    The Individual Defendants either knew, or should have known, that the statements they issued, or caused to be issued on the Company's behalf, were materially false and misleading, but they took no steps in a good faith effort to prevent or remedy that situation.

126.    Each of the Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

127.    Each of the Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

128.    Additionally, each of the Individual Defendants received payments, benefits,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

129.   Individual Defendants Frymire, Paasschen, and Sears are not disinterested or independent.  During the Relevant Period, Frymire, Paasschen, and Sears are or were members of the Audit Committee, the purpose of which is to assist the Company's directors with fulfilling their oversight responsibilities regarding, among other things, accounting, legal, regulatory, and public disclosure requirements. Therefore, Frymire, Paasschen, and Sears knowingly or recklessly allowed the issuance of the aforementioned improper statements.

130.   Individual Defendants Aggarwal and Frymire are not disinterested or independent.  Aggarwal and Frymire are members of the Nominating, Corporate Governance, and Social Responsibility Committee, the purpose of which includes overseeing the corporate governance policies and procedures of the Company.  Defendants Aggarwal and Frymire failed to review regulatory developments and governance best practices for the Company and allowed the Individual Defendants to disseminate material misinformation as set forth above.

131.   Individual Defendants Aggarwal, Banker, Davidson, Frymire, Paasschen, and Sears are not disinterested or independent. Aggarwal, Banker, Davidson, Frymire, Paasschen, and Sears caused the issuance of the 2023 Proxy. As alleged above, due to the Individual Defendants' materially false and misleading statements in the 2023 Proxy, the Company's stockholders voted to approve Items 1-2 in the 2023 Proxy, including the election of certain Individual Defendants to the Board and the ratification of the selection of Deloitte & Touche LLP as the Company's independent registered public accounting firm. Thus, Aggarwal, Banker, Davidson, Frymire, Paasschen, and Sears are not disinterested or independent, and demand upon them would be futile.

132.   Individual Defendants Aggarwal, Banker, Berry, Davidson, Frymire, Paasschen, and Sears are not disinterested or independent. Aggarwal, Banker, Berry,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Davidson, Frymire, Paasschen, and Sears each signed the Form 10-K. As alleged above, the Form 10-K was materially false and misleading. Thus, Aggarwal, Banker, Berry, Davidson, Frymire, Paasschen, and Sears are not disinterested or independent, and demand upon them would be futile.

133.    Individual Defendant Davidson is not disinterested or independent.  Davidson is CEO of the Company, and he derives substantial compensation from his relationship with the Company. As alleged above, Davidson was directly involved in and perpetrated the scheme alleged herein.  Davidson also signed the SOX certifications accompanying the Form 10-K, the May 2023 Form 10-Q, the August 2023 Form 10-Q, and the November 2023 Form 10-Q. Moreover, Davidson was named as a defendant and, therefore, faces a substantial likelihood of liability, in the Securities Class Action based on substantially the same wrongdoing alleged herein. Thus, Davidson is not disinterested or independent.

134.    Accordingly, a pre-suit demand on the Board is futile and, therefore, excused.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

135.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

136.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

137.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

138.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

139.  As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

140.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT II

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

141.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

142.  By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

143.  Plaintiff, on behalf of Sonder, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

144.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

145.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Sonder.

146.   The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Sonder that was tied to the performance or artificially inflated valuation of Sonder, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

147.   Plaintiff, as a shareholder and a representative of Sonder, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

148.   Plaintiff on behalf of Sonder has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Waste of Corporate Assets

149.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

150.   The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

151.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending against the Securities Class Action.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

152.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

153.   Plaintiff, on behalf Sonder, has no adequate remedy at law.

## COUNT V

**Against Individual Defendants Berry, Bourgault, and Davidson for Contribution Under Sections 10(b) and 21D of the Exchange Act**

154.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

155.   Sonder and Individual Defendants Berry, Bourgault, and Davidson are named as defendants in the Securities Class Action, which asserts claims under federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole, or in part, due to Individual Defendants Berry's, Bourgault's, and Davidson's willful and/or reckless violations of their obligations as officers and/or directors of Sonder.

156.   Defendants Berry, Bourgault, and Davidson, because of their positions of control and authority as officers and/or directors of Sonder, were able to, and did, directly and/or indirectly, exercise control over the business and corporate affairs of Sonder, including the wrongful acts complained of herein and in the Securities Class Action.

157.   Accordingly, Defendants Berry, Bourgault, and Davidson are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

158.   As such, Sonder is entitled to receive all appropriate contribution or indemnification from Defendants Berry, Bourgault, and Davidson.

159.   Plaintiff, on behalf Sonder, has no adequate remedy at law.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## COUNT VI

**Against the Individual Defendants for Violations of Section 14(a)**

**of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R. § 240.14a-9)**

160.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

161.    The Individual Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

162.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), provides that "[i]t shall be unlawful for any person, by use of the mails or by means of instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

163.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9

164.    The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2023 Proxy, which was filed with the SEC.

165.    As alleged above, the 2023 Proxy was materially false and misleading because it omitted that: (i) the Individual Defendants knew and/or recklessly disregarded that the Company improperly accounted for the impairment and valuation of the operating lease ROU assets; (ii) the Individual Defendants violated Sonder's Code of Conduct; (iii) the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Individual Defendants violated the Audit Committee Charter; and (iv) the Individual Defendants were not properly fulfilling their risk oversight responsibilities.

166.    The misrepresentations and omissions in the 2023 Proxy were material to Company stockholders. Specifically, the misrepresentations and omissions were material to Company stockholders in voting on matters set forth for shareholder determination in the 2023 Proxy, including, but not limited to, the reelection of certain Individual Defendants and the ratification of the selection of Deloitte & Touche LLP as the Company's independent registered public accounting firm.

167.    The Company was damaged as a result of Defendants' material misrepresentations and omissions in the 2023 Proxy.

168.    As a result of the Individual Defendants' material misrepresentations and omissions, the Company has sustained significant damages.

169.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  •  strengthening the Board's supervision of operations and compliance

2  with applicable state and federal laws and regulations;

3  •  strengthening the Company's internal reporting and financial

4  disclosure controls;

5  •  developing and implementing procedures for greater shareholder input

6  into the policies and guidelines of the Board; and

7  •  strengthening the Board's internal operational control functions;

8  D.  Awarding costs and disbursements of this action, including reasonable

9  attorneys' fees, accountants' and experts' fees, costs, and expenses; and

10  E.  Granting such other and further relief as the Court deems just and proper.

11  **JURY DEMAND**

12  Plaintiff hereby demands a trial by jury.

13

14  Dated: March 17, 2025  **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

15  By:  _/s/ Alex J. Tramontano_

16  ALEX J. TRAMONTANO

17  Betsy C. Manifold (182450)

18  Rachele R. Byrd (190634)

19  Alex J. Tramontano (276666)

20  750 B Street, Suite 1820
San Diego, CA 92101

21  Telephone: (619) 239-4599
Facsimile: (619) 234-4599

22  manifold@whafh.com

23  byrd@whafh.com
tramontano@whafh.com

24

25  **RIGRODSKY LAW, P.A.**
Timothy J. MacFall

26  Gina M. Serra

27  825 East Gate Boulevard, Suite 300
Garden City, NY 11530

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Telephone: (516) 683-3516
Facsimile: (302) 654-7530
tjm@rl-legal.com
gms@rl-legal.com

*Attorneys for Plaintiff*

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## <u>VERIFICATION</u>

I, Brian Hunter, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 12 day of March, 2025.

<br>

DocuSigned by:

225BE4798D1547F...

Brian Hunter